Good morning, your honors. May it please the court. Krista Hart on behalf of appellant Stefan Wilson. This case was a fairly contested sentencing hearing following a guilty plea. It was a fairly protracted hearing lasting about an hour and a half. There were numerous objections made by both sides. The rule 32 errors in this case are intertwined. We do know from the transcript, from the record, three things. We know for a fact that the district court never determined whether the defendant, Mr. Wilson, had reviewed the pre-sentence report with his attorney and whether they had discussed the contents of it. We know that. We also know that We don't know whether he did read it. We only know the judge did not ask him if he read it. That's correct. The judge never determined whether that happened. He's never said, I didn't read it. And there's no indication of anybody saying he didn't. It's just it wasn't asked. So there was a violation. Correct. So you have to show prejudice? In this instance, I would say, no, there is no need to show prejudice. This is not a harmless error analysis under these facts of this case. The case law that holds a harmless error analysis applicable is cases where there are no contested sentencing hearing, no one objects to any factual findings, no one objects to any legal conclusions, and then later it's determined on the record, it's discovered that the judge never asked the defendant if he or she had reviewed the PSR with his attorney. In this case, this was quite a protracted and quite a contested sentencing hearing. The defense counsel filed a lengthy sentencing memorandum which stated numerous factual and legal objections. And so this is a case where the harmless error analysis does not apply. Well, you say you can't do it, but what about the Soltero case, our decision, that does — that is not required when there is — it's clear that no prejudice resulted from the court's mistake? Because I believe in the Soltero case, there was no outside issue that could have been raised. And here we have shown, Your Honor, two very clear factual errors in the PSR that would have been raised by the defendant. One is the number of children that he had. Some of those — some of those he raised. For example, I thought it was somewhat of an equivalent that the PSR says he only has two daughters, but in his colloquy with the judge, he said three daughters. So before he sentenced him, he knew there were three daughters rather than two. Those are the kinds of things that strike me as, you know, things that we don't send cases back for. If he has indicated that he is aware of the critical issues, isn't that sufficient, the so-called mistakes? If who indicates that? If the defendant, through his discussion in open court, indicates, for example, the daughter's mistake, then there's no reason to be critical on that issue, is there? No, Your Honor, because in that context, what Mr. Wilson was saying was he was making an open apology to his family. He wasn't saying, I have read the pre-sentence report and I contest the number of children. I'm just talking about whether or not he was prejudiced if, in fact, he didn't read the pre-sentence report, if he was prejudiced. And I would say, yes, he was, because there were numerous factual objections that were made that he possibly would have illuminated for defense counsel, had defense counsel sat down and read the report with him. But you don't know that he didn't do that. We just know the district court didn't ask about it. But that's correct from the face of this record. But the problem becomes — Are you hesitating because you have outside record knowledge? Correct. Okay. Well, don't get outside the record. But the problem becomes that rule then places a burden on the defendant himself to make an affirmative statement in court that says, I understand I have a right to review the pre-sentence report with my attorney, and I did not do that. Well, let me put it slightly differently. Let's — in this case, we have objections. So we know that somebody read the PSR. The attorney read the PSR. Correct. Wouldn't you have to come at some point and say, I would have made a different objection if I had read this, and the objection would have been X to show prejudice? Who would say that? The defendant. And when would the defendant say that? No, I mean, bringing an affidavit or something. I mean, it's — the question is — You're arguing for structural error, essentially, that if — that if in any case in which the court doesn't — commits a Rule 11 error, doesn't advise, we've got to send it back. But, you know, that's not the way Rule 11 works anymore. That's correct. The harmless error analysis does apply. But my question then would be, when is a defendant supposed to submit an affidavit that says, I never reviewed the PSR? Well, that's a good question. I mean, you can supplement the record on appeal or something like that. But how — if — given the harmlessness analysis — Just to interrupt for a moment, I did move to supplement the record on appeal, and that motion was denied. Yeah, that's right. Yeah, that's a good point. So what is the defendant to do? Yeah. I guess — I guess we should have granted your motion. That's probably right. But what — why — how do you square your theory with a harmlessness analysis? I mean, we have to look at it, whether you're prejudiced. You have to look whether it's harmless error. But basically, you're arguing it's got to be structural. Well, and the problem with taking that tactic is, without going outside the record, there's no way to demonstrate that. And so it puts the defendant in an untenable situation. The case law that says it does have to be remanded are cases where it does appear there could have been information the defendant would have contributed to the sentencing objections in memorandum. And so, like the case of Suss Data, where they say the defendant could have provided information to the defense attorney about whether or not she participated in a specific drug transaction. They didn't have any outside information from the defendant that said, no, I didn't participate in that. They just said — So the mechanism you propose is that it has to be through the supplementation of the record on appeal. Is that right? It would have to be for that, but not solely for that. Because the two Rule 32 objections are intertwined — or errors are intertwined here. And so then we get to the objections that were raised by defense counsel, the factual and legal objections, which the district court never addressed. The district court never said on the record that he reviewed the defendant's sentencing memorandum. Yeah, that's a separate argument. I agree. But go ahead. And the district court never said that he adopts the findings and recommendations of the PSR. All he said was, I find the offense level to be this, without making any independent factual determinations. So the defendant wasn't even aware of what — there's nothing on the record that shows the defendant was aware of what objections had been made, what had been raised, what issues were at stake, how he should address the court. Anything along those lines. Okay. I think we have your argument at hand. Do you want to save your time for a bottle? Yes, please. Okay. I'll hear from the government. Good morning, Your Honors. My name is Steve Lapham. I'm an assistant U.S. attorney in Sacramento, and I was the trial attorney below. And I'm here today to talk to you about the pre-sentence report, which is the pre-sentence report that we're going to look at in a moment. So addressing the first issue, why don't you take the second issue first, if you don't mind, the failure to address the objections. Don't we have to send it back for that? I don't believe so, no. And we didn't discuss specifically what those objections were, but the Court started off its colloquy with counsel by saying he had reviewed the pre-sentence report, he commented on how excellent it was, he had reviewed the sentencing memos, which he described as quite extensive, filed by both sides. The precedent in this circuit, as well as all the other circuits, says that the judge does not have to state specific reasons. He doesn't have to tick off one at a time his reasons. But he never really addressed the objections, did he? Well, not in so many words, but, Your Honor, if I may address it this way. The judge – the reason we're standing here today is because the judge was very interested in this case. This is a judge that spent on the bench for 25 years, and he was a superior court judge for 10 years before that. He knows the Rule 11 colloquy. What happened, I think, is that he took the bench, he had prepped himself very well, and he was interested in going right to the heart of the case from the very beginning. He was very prepared on what the defense arguments were and the government arguments were. And he said so much on the record. And so he mentally skipped over that Rule 11 colloquy that he's supposed to do. Right. But, I mean, he's a good judge. He's thorough. He's prepared. We all know that. Judge Carlton's a good judge. But you still have to address the objections. Well, and you're right. You're right. And I – but the point of that prologue was that the judge was already aware of the competing arguments on both sides. And the circuit law does not require him to say in so many words, I choose this argument over this argument for the following reasons. It just – it requires him to rule on the objection one way or another. And he did so. He adopted the findings in the pre-sentence report. He rejected the defense arguments regarding leadership enhancement, sophisticated means, and the abuse of trust enhancements, all of which were the subject of the sentencing memos and the arguments. And he showed that he was very concerned about the defendant's Rule 35 – or Section 3553 arguments regarding character and so forth. He specifically talked about how the dichotomy here was that the defendant had a rather exemplary first half of his life, and then for some reason slipped into this life of crime. And he was having trouble balancing that. So he was very attuned to what the defense argument was, and he was trying to reconcile that in his own mind. Well, but the first step in sentencing is to correctly calculate the guideline range. Correct. And how do we know if the judge correctly calculated the guideline range if it never ruled on the multiple objections that are contained here? Well, he concluded the hearing after taking all the argument and the evidence by stating that he adopted the findings in the pre-sentence report. That's – I can get the page number for that in a moment. He adopted the findings in the pre-sentence report. He came to an offense level, a particular offense level, and a particular criminal history level, and he determined that the guideline range was what it was.  And he concluded that he adopted the findings in the pre-sentence report. He had the pre-sentence report in front of him, and all that's said, he found it a very excellent report. And the implication from that is that he adopted those findings. But, you know, if you have to decide this by implication, it really cuts against the rule that you have to address the objection specifically, right? I mean, certainly we, you know, we accept your representation. You was prepared. I expect you was. But on the other hand, what's the principal distinction between this case, when there's a fairly lengthy sentencing colloquy, and one where the district judge just comes out and says, I adopt the pre-sentence report. Thank you very much. It's an excellent one. I mean, there's – context may add some things, but I'm not sure that we should go that far. Well, the difference, I think, is that here you had very lengthy sentencing memorandums that, before we even got into court, fleshed out the position to both sides. The judge had that before him. And when he asked – when I asked him, do you want us to go through point by point the various guidelines, he said, no, that won't be necessary. I understand the positions of the defense and the prosecution. I thought he understood it, but he didn't rule on them specifically. That's the problem. Well – I mean, you get to rule them by implication. I understand that, but, you know – Well, and that's – I think he just forgot. That would be my argument, that he adopted everything by implication. He adopted the pre-sentence report with all its various findings. And if this Court requires that he address each one specifically, rather than just receiving arguments on each one and then coming down with a ruling, then I would agree that this case would have – Well, he might have said, I reject all of the objections, but he didn't say that. He just said, I adopt the report. There's a big difference, I think. Maybe not in the – I understand your argument. In the real world, it may not have been a big difference. But, yeah, there is a difference. You know, these PSRs, there's a certain amount of built-in automatic paragraphs that have to be in there to meet the standards. And so you know that there are X number of paragraphs. Most of them are by rote. Most of them are by technology and so forth. But they've got to be in there and they cover. So you can have a very, very lengthy report. But as far as substance is concerned in there, there's not that much. And what there is there, if it's objected to, simply has to be addressed. Well, Your Honor, I would disagree with that. You have the pre-sentence report in front of you. And it's very specific to the defendant. Every single paragraph in that defendant in that PSR. Talks about some facet of the defendant or the offense. And those were gone into in excruciating detail in the sentencing memorandums and expanded upon. This was not a boilerplate PSR. And I don't think this was a boilerplate adoption. Well, I'm not suggesting there are, because there were objections to the contents. But they weren't ruled upon. Well, again, only by implication. Right. So let's turn to the first point. What's a defendant to do to show prejudice? Well, this Court has said that at this stage in the game, after when we get up to appeal, he has to at least allege that there was some prejudice. He can't just leave it on the bare record that the judge forgot to do something. Right. Well, how do you show prejudice in a vacuum? Well, if you can't supplement the record and you can't – the sentencing is over, so you can't produce an affidavit saying, here's what I would have said, how is the defendant supposed to show prejudice? Well, this Court has said on numerous occasions that the way to do it is to allege in your appellate brief that, affirmatively, I did not review the pre-sentence report and to affirmatively state, if I had, I would have had these changes to make. Now, as we know, Mr. Wilson didn't do that in his appellate brief. He did say that he had a couple of changes. Those changes were not anything of substance. He gave two. One was that I have three daughters instead of two. That couldn't possibly have affected his sentence in any way. And he said, in one place in the pre-sentence report, they got it wrong about which count I fled to. But in the other dozen areas, they got the count right. It was obviously a typo. That couldn't possibly have affected the sentence either. So the question before this Court is, are we going to remand this case to the district court to ask the rote question, did you review the pre-sentence report when it appears that there was no prejudice from the failure to ask that question? Other than those two factual determinations of three rather than two children and getting two counts mixed up, were there any other factual allegations or factual challenges that were raised? I think there are some quasi-factual objections. The reason I phrase it that way is they're mixed questions. A bunch of facts, do those facts add up to me being an organizer or a leader? A bunch of facts, do those equate to a sophisticated operation? Well, that wouldn't be factual. That would be more factual and legal. The question, the basic question that I'm getting to is that if a real factual question is raised in opposition to the pre-sentence report, then the judge has got to make factual findings on those conflicts. Were there any of those? The defense only outlines two that I can recall and the ones we just talked about. All the others are, as you say, mixed questions. Of whether or not he should have had enhancements, et cetera. Right. And the defense was able to argue all of those before the judge and in the sentencing memorandum. Okay. We have not discussed any of the specific enhancements, and my counsel did not address those either. Would the Court like me to go into those specific issues? It's your time. All right. The other, oh, before I do that, I just wanted to correct one thing. You know, she will have a chance to respond if you raise it, so use your time wisely. I understand the point. It's funny that we do want to hear your arguments if you want to press the substance. Going back to the issue we've been discussing, though, Ms. Hart suggests that the Ninth Circuit cases are distinguishable because those cases did not involve disputes. And I think Judge Wallace rightly points out that that was not the case in Solterra. In that opinion, the Court specifically said Solterra's counsel raised and the district court considered several objections to facts contained in the PSR. Nonetheless, this Court went on to say that it was harmless error when the Court didn't ask whether the defendant had reviewed the pre-sentence report. There was no showing of prejudice. So, and I also don't think we want a rule that says if there are no objections, then harmless error can apply. You would think it would be just the opposite. If there are no objections, the question in my mind is, do we have a competent defense attorney here who talked to his client about possible objections to raise and, you know, failed to do it? So I don't understand the logic there. Very quickly, on the organizing enhancement, I just wanted to clarify that the plea agreement itself, I believe, covers that. The defendant agreed in the factual basis to his plea agreement that there was another participant involved here. That was Dr. Stephen Barham. And even if you accept that Mr. Barham, for some period of time, was unaware that this was a fraud, the factual basis to the plea agreement specifically says that there came a point in time when he did know it was a fraud and that he was given a fork in the road. Are we going to tell the investors and shut this thing down, or are we going to go forward? Mr. Wilson got a two-level enhancement for being an organizer. It was not a leadership enhancement. It was for organizing the scheme. That's undisputed. And to the extent that another culpable participant is required, the government satisfied that burden. On the sophisticated means enhancement, we listed six separate areas why this should be, why this enhancement should apply. The defense takes a divide-and-conquer approach to it. I would agree that you take any one of those individually, and it may not lead to a sophisticated means, but all six together gets us there. And the biggest one, of course, is that the defendant was able to fool a rather sophisticated businessman in Texas, you're going to hear that case in a minute, and his accountant by phonying up documents about a fictitious accounting firm. And the abuse of trust enhancement appears right on point in the application note in the guideline. This Court has said that the key stone of that enhancement is the difficulty to detect the crime. Mr. Wilson kept everything close to the vest. He didn't allow investors to know what he was doing. He effectively concealed all of his fraud. I think the abuse enhancement clearly applies, and I see that I've run out of time. Thank you, counsel. A few corrections I would like to make. One is nowhere in the record did the district court judge ever say, I adopted the findings in the pre-sentence report. At the end of the sentencing hearing, after Mr. Wilson has allocuted, the judge goes right into Mr. Wilson finishes his allocution, says, thank you for listening to me. Mr. Lapham says, Your Honor, that appears to be it. The Court says, Mr. Hanley, Mr. Wilson, you approach the podium. The Court finds the total offense level is 34. The criminal history category is Roman IV. The guideline range is 210 to 262. He never even says, I adopt the findings in the pre-sentence report. Another clarification I would like to make is nowhere in the transcript does the judge ever say, I have read and considered the defense objections. He never says that. He says, I've read the government's pleadings. And at one point, when the government says, did you want us to go over each of these point by point, the Court says, no, it is not necessary. It really is not necessary. I understand the government's position. It is not without merit. I mean, it is really true. He never says, I understand the defense memorandum. I understand. We've the district court judges sometimes make mistakes or slips or they've read something, they don't say they've read it, they should get it full. But we have some case law in the circuit that kind of helps out a little bit. We assume the judge does his duty unless there's something to the contrary. There was no objection raised. You didn't read the pretrial report or et cetera. There's nothing in there that would tip off the judge that perhaps he should say something else. Is that correct? There's no objection raised at the time of the defense. No. The defense counsel did not raise an objection and say, Your Honor, have you considered my ---- So how do we deal with our cases, say we assume the judge did his required legal duty? Well, and that's part of what is the problem with this case, is we don't know what the judge did. We don't know what the judge thought concerning any of the objections. We don't know what his analysis was for any of the objections. We're not sure that he read or considered all of them. He never said that he found the PSR to be accurate. He never said that he found the government's memorandum to be accurate. So the problem is that's why the rules are there, is so that this Court can have a meaningful review of what occurred at sentencing. And we don't have that here. I understand that it's a difficult problem when the judge doesn't follow across all the T's and dot all the I's. But he did indicate that he was very pleased with the pre-sentence report and the work of counsel. He didn't say ---- I don't believe he said the work of counsel. I believe he ---- The memoranda that had been. Did he comment on the memoranda being well done or helpful? I don't recall that specifically. I do recall ---- To the extent that he does comment upon the pre-sentence report as being good. He says he lauded at the beginning of the hearing, he lauds the probation officer for making a serious attempt at trying to analyze the situation. And at the end, he does say it was a thorough and thoughtful report. It doesn't say it's accurate. But how did he know it's a thorough and thoughtful report unless he read it? Oh, I believe that the judge read the pre-sentence report. Okay. But I don't ---- I'm not ---- there's nothing in the record to show that he read, understood, appreciated, and considered the defense position. What he said was in regards to the PSR. Well, I mean, I think the transcript, and I don't have it in front of me, but I think we can presume he read the sentencing memoranda. He referenced ---- I presume he referenced PSR, but we just don't have any ruling on the objections. Correct. Or as you say and point out, that he apparently didn't even adopt the PSR. Correct. So we don't have any findings either. Correct. Yeah. That's correct. But he did repeatedly say how tough this decision was for him. He did say that. And then he gave him four months less than the max of 20 years. Correct. Okay. So but what do we ---- I mean, in the real world, what do we do with ---- this is kind of an odd case because I think looking at it as a whole, we have a pretty good idea that he actually did all those things and that he did think through them and that he did, in fact, make an informed judgment. I am ---- Are we being hyper-technical if we send it back? I am not as convinced as your owners are that that's exactly what happened. Okay. Well, let me ask you this then. Do you expect a different result if we remand it? I think it's very possible, yes. Okay. I would also, as far as going to each of the specific enhancements as to the leadership role, there's nothing that shows that the leadership role is warranted simply because there is another co-conspirator in the case. It does not mean that Mr. Wilson was necessarily leading him, and the factual basis to the plea agreement does not support the government's argument. As to the abuse of trust enhancement, the analysis that the government applies, whether it's easily detectable, that has been rejected. The Opplinger-Hill line of cases has been rejected by this Court in Contreras, so that's no longer the standard to apply. So I think, Your Honor, in summary, because the transcript and because the record is so vague on a number of errors, a number of issues, the Rule 32, did he review the PSR, and the Rule 32, failing to resolve the objections, leaves us with a record that we just don't know what the judge did. We don't know where he started. And therefore, any sentence, we don't know if the guidelines were calculated correctly, and therefore, any sentence would be unreasonable, and the case should be remanded for resentencing. Thank you, Counsel. Thank you both for your arguments. The case has heard will be submitted.
judges: Mills, Wallace, Thomas